### W. H. THOMAS & SON CO. v. BARNETT.

(Circuit Court, W. D. Kentucky. January 21, 1905.)

1. CUSTOMS DUTIES—MERCHANDISE ENTITLED TO DEBENTURE.

The provision in section 3030, Rev. St. [U. S. Comp. St. 1901, p. 1995], for "merchandise entitled to debenture," has reference to merchandise in a customs bonded warehouse, in regard to which its owner or the importer is entitled to a certificate in due form showing the amount of duties paid thereon, and that it has been duly entered for export to a foreign country.

2. SAME—MERCHANDISE IN UNSAFE PACKAGES—TRANSFER OF MERCHANDISE IN WAREHOUSE.

Under section 3030, Rev. St. [U. S. Comp. St. 1901, p. 1995], merchandise in customs bonded warehouses may not be transferred from the original packages for safety or preservation while in warehouse, unless it is entered for exportation. The importer's only remedy is to remove the merchandise from the warehouse into his own possession.

3. PLEADING—STATEMENT OF LEGAL CONCLUSION.

The expression "merchandise entitled to debenture," in section 3030, Rev. St. [U. S. Comp. St. 1901, p. 1995], is there used as a sort of legal conclusion based upon other provisions, and, in order to be sufficient, a pleading founded on section 3030 should allege that the antecedent provisions have been met. It is not enough merely to state that the merchandise is "entitled to debenture," without averring the facts the existence of which makes it so entitled.

Augustus E. Willson, for plaintiff.
R. D. Hill, U. S. Atty., for defendant.

EVANS, District Judge. This is an action at law, brought in the Jefferson Circuit Court against the defendant, the surveyor of customs at Louisville, Ky., who has removed it into this court under a writ of certiorari issued pursuant to section 643 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 521].

The plaintiff, in its petition, alleges that certain distilled spirits manufactured in Kentucky had long ago been exported to Europe; that within three years before the institution of this action plaintiff imported said distilled spirits into the United States; that they were merchandise "entitled to debenture"; that, as the owner thereof, it desired to transfer the same into packages other than those in which they were imported; that on November 16, 1903, plaintiff made application in writing to the defendant for permission to transfer the said

whisky to bottles; that said whisky is in the customs bonded warehouse in Louisville, Ky.; that for 10 or more years it has been in the barrels in which it was originally put when manufactured; that the barrels are old, worn, and decayed; that by reason of age, much handling, rust of iron hoops, and other causes, the packages have all become unfit for holding their contents, which will waste and evaporate and otherwise be greatly injured or lost if not transferred to new packages; and that the defendant at the time of the application aforesaid knew all these facts to be true. The petition further avers that plaintiff's application to the defendant was denied and refused by that officer, and that instead of granting it he referred it to the Secretary of the Treasury, who advised and instructed the defendant that there was no law to authorize the giving of such permission under the circumstances of the plaintiff's case. The plaintiff sets out in full in its petition section 3030 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1995], and asserts that defendant has refused to accord to plaintiff the rights conferred by that section, and that he has thereby done plaintiff a wrong and injury, for which it asks damages in the sum of $5,000, and it also prays the judgment of the court ordering the defendant to permit the transfer applied for. There is no averment in the petition, nor any indication from anything stated therein, that it is the purpose of the plaintiff to export the whisky, or any part of it. There is no averment that the whisky, or any part of it, has been entered at the customs office for export to any foreign country. The plaintiff does not aver that it has paid the duties under the laws of the United States upon the whisky, though we may assume that payment of the duties has been secured to the United States, or that such payment cannot be evaded by re-export, because the whisky is still in the bonded warehouse. Doubtless the necessary steps provided by law have been taken in order to permit the whisky to remain in the warehouse. There is no averment in the petition that the defendant willfully refused to permit the transfer, but possibly that omission may not be material, inasmuch as a positive refusal to permit the transfer is alleged by plaintiff, although the petition shows that the refusal was based upon instructions from the Secretary of the Treasury, the superior officer of the defendant, and which instructions the defendant was probably bound to follow. Certain papers are referred to in the petition as being made exhibits therein, but they have not been filed, nor shown to the court; but the view I take of the case probably renders this circumstance immaterial.

The plaintiff's petition being such as I have indicated, the defendant has filed a general demurrer thereto, and thus raises a very interesting question, which depends for its solution upon the proper interpretation of section 3030 of the Revised Statutes, which is as follows:

"When the owner, importer, consignee, or agent, of any merchandise entitled to debenture may wish to transfer the same into packages other than those in which the merchandise was originally imported, the collector of the port where the same may be shall permit the transfer to be made if necessary for the safety or preservation thereof."

The language of the section is plain enough, except in the use of the phrase "entitled to debenture." That phrase, however, is the one we

are most concerned to clearly understand and interpret, for upon it the right of the plaintiff must turn. The, word "debenture," as used in the section, is a somewhat antiquated, and possibly abnormal, term; one that nowadays conveys no accurate meaning at first blush to any but the initiated. The petition, as we have seen, alleges that the distilled spirits were "entitled to debenture," and plaintiff's counsel insists that that is the statement of a fact, and not the statement of a mere legal conclusion by the pleader. It is the only statement in the petition in this essential connection, and plaintiff argues that it is equivalent to an assertion of the general right everybody has to export merchandise, and that that is what the phrase means, and that the statute intended to give every owner of property in its nature exportable the right, while in government custody, to transfer it out of bad packages into good ones, if necessary for its preservation. As we have seen, however, no facts (if any others are essential) are set out or stated in the plaintiff's pleading as a basis of the averment that this merchandise was "entitled to debenture." The pleading in this respect follows the language of section 3030, Rev. St., literally. Doubtless there are cases where a pleading is sufficient when it follows the statutory language on which it is based, but to be so it must embrace all the essential parts of such language. Here there are several statutory provisions besides those contained in section 3030, which show that the phrase "entitled to debenture," used in that section, is itself there used as a sort of legal conclusion, based upon other provisions, and, in order to be sufficient, a pleading founded on section 3030 should show that the antecedent provisions have also been met.

Sections 3030 and 3031, as they now appear in the Revised Statutes of the United States, originally made up section 32 of the act of March 1, 1823, c. 21, 3 Stat. 738, what is now section 3031 being there a proviso to what is now section 3030. The act of March 1, 1823, was an amendment to the very elaborate customs act of March 2, 1799, c. 22, 1 Stat. 627–704. What remains of those most important enactments respecting drawbacks is now found in chapter 9, tit. 34, of the Revised Statutes, §§ 3015–3057 [U. S. Comp. St. 1901, pp. 1988–2003]. The two acts referred to, many of the essential features of which are still in force, provide, among other things, for the payment of drawbacks to all persons who may return to a foreign country merchandise which has been imported into this country. They provide for the repayment (less 1 per cent.) of all the duties paid thereon where the duties paid exceeded $50 in amount, and where the merchandise is returned within a certain time (now three years) after importation. But the duties have to be paid before they can be repaid as drawbacks, and the legislation points out how entries at the custom house for exportation of the merchandise intended to be returned to the foreign country shall be made. At a certain point in the process a certificate is to be given to the owner of the goods showing the amount of duties paid, the entry of the goods for exportation, etc., and the amount of money shown by the certificate to be due to the holder thereof is paid by the United States, a permanent appropriation having been made for that purpose. This certificate, curiously enough, and for some reasons not easily as-

certainable, is called a "debenture," and Bouvier, in his Law Dictionary, thus defines it:

"A certificate given in pursuance of law, by the collector of a port of entry, for a certain sum due by the United States, payable at a time therein mentioned, to an importer, for drawback of duties on merchandise imported and exported by him, provided the duties on the said merchandise shall have been discharged prior to the time aforesaid."

This definition seems to be perfectly accurate under sections 3038, 3039, and 3040 of the Revised Statutes, which are parts of the act of 1799. A form for the debentures was prescribed in section 80 of the act of 1799, and it, with only slight change, is in use at the present day. It is now as follows:

Debenture Certificate.

District of ———.

——————, 19—.

Debenture for ——— dollars ——— cents.

In pursuance of law, I hereby certify that the sum of ——— dollars will be due from the United States of America, payable at this office, to ———, or order, on the ——— day of ———, 19—, for the drawback of duties on merchandise imported by ———, in the ———, Master, and exported by ——— in the ———, Master, the duties arising from the importation of the said merchandise having been paid. ——————,

Collector.

Countersigned:

——————,

Naval Officer.

This is the "debenture," and it seems clear enough that to this the merchandise must become "entitled" in order to bring it within section 3030.

The court has carefully examined Act March 2, 1799, c. 22, 1 Stat. 627 et seq., and also Act March 1, 1823, 3 Stat. 738, and by referring to sections 75 to 81 of the former and to section 32 of the latter it can plainly be seen what meaning should be ascribed to the phrase "entitled to debenture" in what is now section 3030 of the Revised Statutes. That phrase refers exclusively to merchandise the importer of which is entitled in respect thereto to a certificate that he has paid the duties thereon, and has entered it at the custom house in due form for exportation to some foreign country. No merchandise, except under those circumstances, is "entitled to debenture." When the importer of merchandise becomes entitled to such a certificate respecting them, then, but not till then, is he entitled to make an application under section 3030; and in that contingency, if the provisions of section 3031 are found to be met, he is entitled to have the permission granted—that is to say, if the owner has paid the duties, and has manifested his intention to export the merchandise by an entry thereof to that effect in the custom house, then if the original packages in which the goods are stored are unfit to bear the exportation, it is the duty of the customs officer to permit the owner to transfer the goods into fit packages. This is necessary also from another standpoint, namely, as an exception to the general rule fixed by section 3016 (also a part of the act of 1799), which requires that all exportations of imported articles shall be made in the same packages in which they were imported. In short, the drawbacks allowed under section 3015 of the Revised Statutes are ascertained by the customs officers, and the amount thereof certified in a

paper called a "debenture," it all being a process by which the government determines and certifies the amount which the law requires it to refund of certain duties paid on goods imported to this country, but which, before going into consumption here, are entered for export to be taken out of the country again. We have now reached a point where we are prepared to perfectly understand the meaning of the phrase "entitled to debenture," and we conclude that it signifies and relates to merchandise the importer or owner of which is entitled to a certificate in due form showing the amount of duties paid thereon, and that it has been duly entered for export back to a foreign country. Where it is the intention of the owner to export merchandise to a foreign country after he has paid the duty thereon, and when he has made at the custom house a proper entry for its exportation, then that merchandise is "entitled to debenture," within the meaning of section 3030; and if the owner should discover that the packages which contained it are unsafe, and unfit to stand the voyage, he may apply for permission to transfer it to other packages, and in that contingency it is the duty of the collector of the port, under section 3030, to permit the transfer, provided (under section 3031) he discovers, after inspection, that the original packages are unfit. But the collector of the port is under no obligation whatever—indeed, he has no lawful authority—to permit the transfer unless the merchandise is "entitled to debenture" within the meaning of that phrase as we have stated it. Unless he enters the goods for exportation, apparently his only remedy is to pay the duties, remove the merchandise from the bonded warehouse, and thereafter himself treat it in any lawful way necessary for the preservation of his property. It may be true, as argued by counsel, that justice and common sense obviously demand that facilities should be provided for the transfer of merchandise from bad packages to good ones in all cases where the commodity is in customs bonded warehouses; but that is a matter entirely for the consideration of Congress. The court has only to determine in this case whether the defendant has violated any right given by law to the plaintiff, and that question depends upon whether Congress has imposed upon defendant any duty which can be enforced for the plaintiff's benefit. It does not appear that Congress has done so, nor that it has ever legislated to meet this particular class of cases.

It may not be improper to add that there may be some law or regulation which may authorize the remission of 99 per cent. of the duties chargeable against merchandise in a customs bonded warehouse without the formality of actual payment of the duties in cases where an entry is made of the merchandise for export while it still remains in bond. I have not, however, been able to find any such law or regulation, and it is not very essential that we should examine further into that phase of the case, because in no contingency can the indispensable condition precedent of due entry for export be avoided before any merchandise can become "entitled to debenture." This condition is not met by any averment in the plaintiff's petition.

From what has been said it is entirely clear to the mind of the court that the general averment in the plaintiff's petition that the whisky therein described is "entitled to debenture" when the application for permission to transfer it to new packages was made is a mere statement

by the pleader of a legal conclusion, and is therefore wholly insufficient in point of law. As the petition alleges no facts which sufficiently show that the plaintiff's merchandise was ever entered at the custom house for exportation after its importation into the United States, and as the petition alleges no other state of facts which shows the plaintiff to be entitled to the certification called a "debenture," we must conclude that it does not show any right to any part of the relief sought against the defendant.

The demurrer will therefore be sustained, and the plaintiff may have leave to amend its petition within 20 days, if so advised.